RAINOLD, Judge.
This is a suit for damages to plaintiff’s residence allegedly caused by construction activities conducted by Boh Brothers Construction Company, Inc. pursuant to a contract to install sewerage for the City of Westwego. Defendants are Boh Brothers Construction Company and the City of *196 Westwego. Judgment was rendered in favor of plaintiff for $3,900.00 against Boh Brothers Construction Company and the suit against the City of Westwego was dismissed. Boh Brothers appealed from this judgment. Plaintiff also appealed asking that the City of Westwego be held liable in solido with Boh Brothers.
The installation of the sewerage took place intermittently during the months of August, September, October and November of 1964. As the result of this construction, plaintiff claims the following damages to his house: cracks in the driveway, porch, parlor, kitchen, bathroom and one of the bedrooms. He also claims that his chain wall foundation was cracked and that the tile on his roof was loosened. He alleges two main causes of the damage: (1) Boh Brothers used the following method of removing the concrete sidewalk in his neighborhood, i. e., that it used a backhoe[1] to pick up large slabs of the concrete eight to ten feet in the air and then drop them into the street, and (2) that the same backhoe was used to “chew up” a stump which was being removed to construct a manhole across the street. The concrete was allegedly dropped approximately 40 feet away from his residence and the stump allegedly removed about 100 feet away from his residence. Both plaintiff and his wife testified their house experienced vibration during the construction activities; that the chandelier shook, and that the pots and pans in the kitchen cabinet rattled.
Three lay witnesses testified for plaintiff — Ernest J. Tassin and Anthony J. Alario, both aldermen at the time of construction, and George F. Rossignol, a painter. Mr. Tassin corroborated plaintiff’s testimony as to the method of construction used by Boh Brothers and described the concrete slabs picked up by the backhoe as being eight or ten feet long and four feet wide. However, Mr. Tassin, who also had a laundry route, testified he was only able to observe the operation IS or 20 minutes at a time, three days a week, and he could not recall the days or even the month in which he observed these alleged operations.
Mr. Alario testified he visited plaintiff’s home in August, 1964 at the beginning of the sewerage construction operation and observed cracks inside of plaintiff’s house as well as those in the chain wall foundation. However, his testimony conflicted with that of plaintiff’s to the extent that plaintiff testified there were no cracks in the chain wall during the month of August when operations were being conducted on the opposite side of the street. Moreover, although Mr. Alario testified plaintiff’s home was in good condition prior to the construction, he did not remember just when he visited the home previous to August, 1964 when he observed the damages. Mr. Rossignol testified he painted plaintiff’s house two years before the sewerage project began and said that at that time it was in good condition. Although he visited plaintiff’s home during the two-year interim, he admitted that he did not inspect the house during that period.
Three foremen for Boh Brothers Construction Company testified. One of them, Claude Baldo, described the method of picking up the sidewalk as follows: A laborer first took a mall and broke a slit in the pavement and lifted up the concrete with the backhoe and that sometimes it would break off and that if it didn’t, the laborer would take a mall and break it off while the backhoe was holding the concrete about a foot high. Then these pieces of concrete would be hauled in the bucket of the backhoe and deposited on the shoulder of the street where a laborer would use a mall to pound the concrete into small pieces *197 so that it could be hauled away. He further testified that the backhoe machine could not lift pieces of concrete eight or ten feet long because such large pieces would slip off, the teeth of the bucket not being able to hold their weight.
Vincent Di Benedetto, a foreman in underground distribution for Boh Brothers, testified the digging of the manhole which plaintiff claims contributed to the damage to his house was only five feet away from another building and that the sidewalk in front of the same building also had to be removed but that he did not receive any complaints from the owners or occupants of the building.
Earl Ash, another foreman with Boh Brothers, testified the sections of concrete picked up were three to four feet long and that the backhoe would lift them just enough to clear the lawns and shrubbery. He denied his crew ever dropped concrete from a height eight to ten feet in the street as there was no reason for doing this. All three foremen denied they encountered any stumps in the area.
The above testimony must be evaluated in the the light of the rule that it is the plaintiff who bears the burden of proof to show that the contractor’s operations caused the alleged damage. The fact that damage is discovered during construction activities is not sufficient to carry the burden of proof especially where it is possible that other factors may have caused the damage. Tadin v. New Orleans Public Service, Inc., 226 La. 629, 76 So.2d 910; Beck v. Boh Bros. Const. Co., La.App., 72 So.2d 765; Hearsey v. City of New Orleans, La.App., 192 So. 148; Brown v. Travelers Insurance Co., La.App., 169 So.2d 230. In fact it has been held that expert testimony is necessary to carry that burden of proof. See Hearsey v. City of New Orleans, supra. The experts who testified were Ridgley T. Finley nad Sidney P. Pertuit, contractors, and Robert Boh and Guy L. LeMieux, civil engineers. Mr. Finley testified that the type of cracks in the walls and ceilings found in plaintiff’s residence are found quite often in New Orleans residences. When asked if he could assign any reasons for the cracks and defects which he found, he said they could be caused either by settlement or vibration. He also testified that houses constructed on piers, as is plaintiff’s house, are more likely to settle than those constructed on pilings. Although Mr. Per-tuit was qualified, as was Mr. Finley, as an expert in the field of residential contracting, he was not asked his opinion concerning the cause of the damage but simply gave an estimate of the repairs.
Robert Boh, vice president of Boh Brothers Construction Company, who testified for the defendant, also said that because plaintiff’s home was built on piers that it was especially subject to settlement. In his opinion, the damage to plaintiff’s home could have been caused by the passage of traffic, the shrinkage and subsidence of the soil, changes in the water content and moisture of the soil, as well as high wind. With regard to the latter, it is significant that between the time of the sewerage installation and the time of trial, plaintiff received $1,365.00 as a hurricane insurance settlement. Mr. Boh also testified that the vibrations caused by the operation of the backhoe would be about as severe as that caused by normal traffic. When asked if it were possible that the dropping of a 1,000 pound piece of concrete into the street would damage a residence such as that owned by plaintiff, he testified that it was not possible to give a definite answer to the question because it would depend on the exact soil conditions between the point where the concrete was dropped and the house itself and that one would have to make extensive measurements in order to give such an estimate. In this latter regard, his testimony was corroborated by that of Mr. LeMieux who testified for the plaintiff. He said that he could not answer the same question specifically because there were “so many variables.” His general testimony was to the effect that all the operations *198 complained of by plaintiff definitely could have caused the damage. He also said that he would not recommend a house with a heavy tile roof such as is on plaintiff’s house to be built on the very porous soil in plaintiff’s neighborhood. Further, he was asked the following question:
“Q. And in order to determinne with any reasonable degree of certainty whether or not damage would result from a particular vibration from a particular type of operation, it would be necessary to take measurements and make calculations which can be made on an engineering basis, is that correct?
“A. Yes, I would say yes, that’s true. That’s not the whole story but it’s true.”
He admittedly did not make any such measurements and calculations. He also testified that vibrations strong enough to rattle pots and pans and a chandelier, would not necessarily be strong enough to cause damage to plaintiff’s home.
In view of all the evidence, especially that of the experts, and the fact that there was evidently no damage to a structure only five feet away from the operations of which plaintiff complains, we find that he has not carried the burden of proving the causal connection between the damage to his house and the contractor’s operation.
Because causation was not proven, it is unnecessary to consider the liability of the City of Westwego. For the above reasons the judgment is affirmed in that it dismissed the suit against the City of West-wego but is reversed in that it cast Boh Brothers Construction Company for damages. All costs of this appeal are to be borne by the plaintiff.
Judgment affirmed in part and reversed in part.

. The name “backhoe” is used to describe a type of equipment commonly used in excavation and construction work. It is a tractor usually having a scoop mounted in front and a bucket with teeth designed for digging mounted in the rear on an extended arm.