STOULIG, Judge.
This matter involves the consolidation of seventeen suits, representing the claims of one hundred nineteen plaintiffs for residential damages allegedly caused by the installation and construction of a concrete drainage canal under Louisa Street in the City of New Orleans. From an adverse judgment in favor of the defendants, Sewerage and Water Board of New Orleans (“S.&W.B.”); Boh Brothers Construction Company, Inc. (“Boh”); and its insurers, The Travelers Insurance Company and the' Travelers Indemnity Company, the plaintiffs have lodged this appeal.
In November, 1962, Boh was awarded a contract to construct a concrete drainage canal (barrel or culvert type) eleven blocks in length and 17 feet in width. Its installation required an excavation 14 feet in depth and 21 feet in width, supported by a foundation consisting of 183 thirty-five foot length round piles per block. Also involved was the relocating of 8 inch terra cotta sewer lines and 6 inch water mains, in separate trenches, on each side of Louisa Street.
Contract plans and specifications were prepared by S.&W.B. engineers. Test pilings were driven but no soil boring was made prior to the commencement of construction. Specifications also required the contractor to provide adequate bracing subject to the approval of the S.&W.B. Work consisting of driving of pilings, spreading of clam shells, laying of reinforcing steel pad forms, and pouring of the quick-drying cement base was performed in recurring segments of 100 feet, constituting the extent of excavation which could be accomplished without creating undue stress on the stability of the surrounding soil.
This operation involved the use of relatively heavy equipment, such as a back-hoe digging machine, a pile driving rig with a Vulcan Hammer, and a dragline with a clam shell bucket. Trucks were used to transport this equipment and to cart materials to the job-site.
After obtaining legislative approval in 1964, suits were filed against the City of New Orleans, the S.&W.B., and the other defendants on behalf of the numerous claimants for damage to their homes. In their petition, plaintiffs predicated their right to recovery on several legal concepts: as a tort action under LSA-C.C. art. 2315; statutory liability without negligence[1] imposed by LSA-C.C. art. 667; and the damaging of private property for public purposes without payment of just compensation as required by LSA-Const. Art. 1, § 2.
*745 Prior to the submission of the matter, the parties entered into a written stipulation of an agreed quantum of damages to be awarded the respective plaintiffs in the event the defendants were cast in judgment. Appellants submit that the implication of the stipulation is an admission by defendants that the canal operations did cause some damage to the dwellings. This contention is refuted by the explicit terms of the stipulation, the stated purpose of which is to shorten time of litigation and avoid incurring substantial expert fees, with a full reservation of rights by the parties as to all issues, save quantum.
The matters were tried before a Commissioner, who found no showing of negligence either in the preparation of the plans or the performance of the construction work, and that the facts as presented did not warrant the application of LSA-C.C. art. 667 or LSA-Const. Art. 1, § 2. Additionally, he concluded the plaintiffs failed to prove by a preponderance of evidence that the activities of the contractor were the probable cause of the damage to their homes. The trial court, agreeing with the Commissioner’s findings and recommendation, rendered judgment dismissing plaintiffs’ suits.
Though the plaintiffs have appealed from the entire judgment, the sole specification of error urged in their brief is directed to the trial court’s finding that plaintiffs failed to prove a causal relation between defendants’ work activities and the damage occasioned to their properties. Apparently, they are now exclusively relying upon LSA-C.C. art. 667 (liability without negligence) as construed in the case of Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971), as the legal basis for their right of recovery, since no attack is directed against the court’s failure to find that the defendants were guilty of negligence or that the constitutional guarantee of just compensation is applicable. In fact, no reference is made in the brief to either LSA-Const. Art. 1, § 2, or LSA-C.C. art. 2315, nor is any jurisprudence cited in connection therewith.
At the outset, the observation must be made that whether the action is one sounding in tort (LSA-C.C. art. 2315) or statutory liability without negligence (LSA-C.C. art. 667) the plaintiffs bear the burden of affirmatively showing, by a preponderance of evidence, a causal connection between the defendants’ construction work and the occurrence of the damages. Furthermore, causality between the act and the alleged consequence is a question of fact, the determination of which falls within the province of the trial judge, whose findings in respect thereto shall not be disturbed on appeal unless manifestly erroneous.
LSA-C.C. art. 667 provides:
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
Under this article the obligation of the adjoining property owner not to interfere with his neighbor’s enjoyment of his property is unequivocal and absolute. The right to recovery is not dependent upon proof of negligence because the liability imposed is statutory in nature. However, it is an indispensable prerequisite that the evidence preponderate in favor of the factual conclusion that the work performed on the. adjoining property was the proximate cause of the damage sustained.
The burden therefore rested with the plaintiffs to establish, by a preponderance of evidence, the causal connexity between the construction work and the damage to the houses. The trial court found that appellants failed in their proof of this fact, which finding we reaffirm.
*746 Plaintiffs urge that the vibration from the construction activities [2] of Boh, either directly or indirectly, caused cracks in the walls of their homes and a separation of appurtenances from the dwellings. The record does not sustain this contention.
Mr. Robert Boh testified that there was minimal resistance to the driving of the piles, as reflected in the motion pictures of the operation, which showed that a single blow of the hammer caused the pile to sink “quite a distance,” and that no obstacles were encountered in the sinking of the piles. Accordingly any vibration would have been minimal in degree.
Plaintiffs’ own experts do not assign vibration as one 'of the causes of damage. Mr. William H. Butts, their expert civil engineer, described the soil as “soft or very soft clay,” which “is generally not affected too much by pile driving or heavy equipment.” He thereby indicated that any resulting vibration would be inconsequential.
The only contradictory evidence relative to the source and intensity of vibration was that given by individual plaintiffs w,ho testified that vibrations caused objects to fall from shelves and cracks to appear in the walls. The Commissioner found this uncorroborated testimony to be insufficient to constitute a preponderance of evidence necessary to establish a connexity between the construction vibrations and the alleged damage.
Plaintiffs also maintain that dehydration of the land and soil slippage were additional causes of the damages.
Dehydration allegedly resulted from water seepage into the excavations for the canal, sewer lines, and water mains. The only evidence bearing upon this issue consisted of the testimony of Messrs. Albert Saucier, Jr., S.&W.B. Inspector; Edmund F. Hughes, S.&W.B. Superintendent; and J. B. Lehman, Boh Bros. Superintendent, appearing on behalf of the defendants. In substance they stated that the steel sheeting restricted seepage to a minimum and occasionally water would accumulate overnight, requiring the brief operation of a 2-inch pump for its removal. No contradictory or rebuttal evidence was tendered on behalf of the plaintiffs. Obviously this insignificant quantity of seepage could not have reduced the water table in the entire tributary area affected.
Drawing upon post construction information, plaintiffs’ expert, William H. Butts, hypothesized that the soil slippage could have been prevented by the use of intermediate braces and the immediate bracing of the bottom of the canal excavation. This opinion is neither supported by the evidence nor shared by any of the other experts. From the record it affirmatively appears that the system of shoring was one of the best ever utilized for this type of construction. It consisted of interlocking steel sheeting % inch thick, IS inches wide, and 20 to 25 feet in length, which provided a bulkhead at least 7 feet below the bottom of the excavation. An intermediate brace would have only overcome the elastic deflection of 1 inch in 30 feet, a normal tolerance inherent in rigid steel material. It would not have insured greater structural integrity of the excavation and would have had to be removed before the concrete barrel or culvert could be constructed.
Additionally, there is no physical evidence that a soil movement (slope failure) actually occurred. The total lack of demonstrative physical evidence identifiable with this type of failure, such as an upheaval in the center of the excavation, cracks in the canal barrel, toe-in of sheeting, cave-ins, displacement of utility poles, and rupture of underground utility lines, clearly militates against any suggestion of a lateral or vertical movement of the soil.
*747 Mr. M. B. Dornblatt, expert consulting engineer of plaintiffs, advanced the opinion that the soil settlement was caused by a “leaching of fines” and the removal of the sheet pile bulkhead. Again we find that this expert stands alone in this belief.
Leaching of fines in this instance would be the passage or seepage of fine material, like a sandy soil, through the interlocked steel sheet piles. The reasonableness of this assumption is destroyed by the undisputed fact that the soil under Louisa Street is a soft clay with a cohesive quality, rather than the grandular nature necessary for passage through the sheet piles.
Likewise, Mr. Dornblatt’s conclusion that the void left by the removal of the steel sheeting caused a sliding of the soil cannot prevail over the preponderance of evidence to the contrary. The sheeting was removed, piece by piece, in a vertical plane and therefore any void left by its removal would only slightly exceed its inch thickness, which would be insufficient to create a soil failure for several blocks from the excavation. Simultaneously with the act of removal, the void left by the sheeting was filled with river sugar sand, jetted with water to achieve optimum compaction. All of the experts agree that this type of compaction is the best because sand is more sensitive to movement and the jetting of water aids in the thoroughness of compaction, thereby filling all voids. It should also be noted that economics dictated the removal of the steel sheeting because of its extreme high cost,[3] coupled with the fact that its retention would have served no useful engineering purpose, nor improved the integrity of construction.
After reviewing the entire record, including the allied exhibits filed in connection therewith, we are convinced that there is an adequate evidentiary basis for the trial court’s conclusion that plaintiffs failed to establish by a preponderance of evidence the causal connexity between the construction work and the damage to the surrounding houses. We agree that the precise cause of the soil subsidence was never established, nor is there any basis for concluding that the defendant contractor varied the water table so as to cause distress to the dwellings situated not only on Louisa Street but also for several blocks on each side of the canal site. The case of Adam v. Boh Brothers Construction Co., 207 So.2d 195 (La.App. 4th Cir. 1968), stands for the principle that a coincidence in point of time between construction activities and damage alone is insufficient to satisfy plaintiff’s burden of proof. The court succinctly stated at page 197:
“* * * [Tjestimony must be evaluated in the the [sic] light of the rule that it is the plaintiff who bears the burden of proof to show that the contractor’s operations caused the alleged damage. The fact that damage is discovered during construction activities is not sufficient to carry the burden of proof especially where it is possible that other factors may have caused the damage. [Citations omitted.]”
We find no manifest error in the trial court’s findings of fact and accordingly they must remain undisturbed.
Having determined that plaintiffs have failed to establish the causal connection between the defendants’ work and the damage complained of, no need exists to rule on the applicability of LSA-C.C. art. 667 to a municipal corporation.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by appellants.
Affirmed.

. Gulf Insurance Company v. Employers Liability Assurance Corporation, 170 So.2d 125 (La. App. 4th Cir. 1964).

. Movement of trucks and heavy equipment, the driving of piles, the removal of steel sheeting, and the use of the clam shell bucket.

. Mr. Boh testified that “ * * * sheet piling * * * of fifteen hundred feet on both, sides would cost three, four, five hundred thousand dollars.”