138 So.2d 420 (1962)
Sosthene TRAHAN, Plaintiff-Appellee,
v.
Asa BEARB, Defendant-Appellant.
No. 509.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
*421 Beard & Shelton, by Caliste Beard, Jr., Abner C. Chappuis, Rayne, Dugas, Beon, Bertrand & Smith, by James W. Bean, Lafayette, for defendant-appellant.
Fournet & Adams, by Robert J. Adams, Lafayette, and Deballion & Miller, by Roderick L. Miller, Lafayette, for plaintiff-appellee.
Before TATE, FRUGÉ and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Trahan sues for damages allegedly caused to his 1953 cotton crop by the defendant Bearb's spraying of his own rice acreage with a 2-4-D chemical herbicide. The trial court awarded the plaintiff $2,470.26.
The defendant appeals. By an answer to the appeal the plaintiff prays for a slight increase in the award.
The preponderance of the evidence unquestionably supports the trial court's finding that the 2-4-D chemical spray used by the defendant Bearb to rid his rice fields of weeds was blown by the prevailing winds onto the plaintiff's cotton fields in the immediate vicinity and that the plaintiff's growing cotton plants were harmed by such spray. The defendant is thus liable for damages thereby caused. Gotreaux v. Gary, 232 La. 373, 94 So.2d 293.
The principal question raised by the defendant's appeal concerns whether the adverse effects upon the growing cotton plants resulted in any proven loss of ultimate yield, and whether any such loss sustained was proved by adequate and competent evidence.
*422 Under the jurisprudence, ordinarily the proper criterion to determine the approximate tort-caused loss sustained by a farmer is based upon the average yield of crops of the same kind planted and cared for in the same manner in the same vicinity, sold at the market value prevailing when ready for harvest; less the cost of marketing, harvesting, and maturing such crops, and subject also to a credit for the amounts actually received from the selling of the reduced yield. Dubois v. Phillips Petroleum Co., 221 La. 161, 59 So.2d 107; Camus v. Bienvenue, La.App. 1 Cir., 91 So. 2d 99; Rhymes v. Guidry, La.App. 1 Cir., 84 So.2d 634.
Counsel for the defendant-appellant ably urges that the plaintiff has not adequately proved any loss by such criterion. Counsel states in brief: "In the instant case, the only evidence submitted by plaintiff-appellee is [his own] self-governing evidence and also the testimony of experts, County Agents, and government inspectors. Plaintiff-appellee failed to corroborate and substantiate their testimony with that of other cotton farmers in his vicinity as to what the yields were for that year * * *. What plaintiff-appellee made in preceding years does not establish what he will make in any ensuing year. It does not even suggest a fair or reasonable basis, considering particularly in this instance the low yields of this type of crop in that vicinity in the year 1953 * * *. It is difficult to conceive that plaintiff-appellee is such a good farmer that even adverse climatic conditions cannot affect the outcome of crops."
The defendant-appellant then relies upon the testimony of nine cotton farmers in the vicinity whose 1953 yields per-acre were lower than or approximately the same as the plaintiff's 1953 yield. These farmers uniformly testified that, because of excessive rain and insect infestation, their 1953 cotton crop was the worst in recent years.
On the other hand, as verified by the Associate County Agent, the plaintiff Trahan produced substantial evidence that he was a farmer of exceptionally superior ability, using the most advanced scientific methods of fertilizing, poisoning, and cultivating his cotton, and that he had been so recognized by a special award by the Lafayette Chamber of Commerce. Over a period of more than ten years, by recommended crop rotation, by frequent soil testing and applying corrective chemicals as needed, and by use of winter and cover crops, Trahan had consistently maintained and increased the long-range fertility of his soil. He argues that neither the rainfall nor the caterpillars should have caused damage in 1953 to his own crops, since his land was high and well-drained and because his crops were planted and matured at such dates that any undue rainfall did not interfere with them.
Under cross-examination, each of the nine farmers testifying as to their poor production in 1953 admitted that he failed to use some or all of the scientific aids to high yield recommended by the county agent and used by the plaintiff. At least three of them had to replant one or more times, causing a later maturing and a loss of yield, because the rains caught their crops at a different stage than was the plaintiff's or because their lands were flooded, unlike the plaintiff's. In general, their estimated average annual yield per acre during the years immediately preceding 1953 was lower than the plaintiff's average yield in those years.
Further, the plaintiff produced expert witnesses who testified as to the severe and extensive damage to his growing cotton plants caused by the drift of the defendant's 2-4-D poison onto them in June, 1953, and expert testimony that such severe damage to these plants at this stage in their growth should reasonably have resulted in a 30 to 50% loss of ultimate yield.
We should also comment that the defendant-appellant also produced evidence that in 1953 the plaintiff's cotton had been affected by "rust", i. e., red spider mites. However, *423 the evidence reflects that a serious infestation affected only a small 3.5 acre cotton patch and then, according to the County Agent, at a time when the cotton was already made, so that the ultimate yield was not affected. Tr. 225, 245.
Under the circumstances thus outlined, the trial court properly held that the plaintiff had proven actionable damage and an undoubted loss of crop yield through the defendant's permitting the harmful 2-4-D to drift onto the plaintiff's growing cotton crop. We further hold that the trial court did not abuse its discretion by the method used to determine the specific award to be made for the undoubted crop damage so caused. The more efficient manner in which the plaintiff cultivated his cotton and the more fertile condition in which he maintained his soil, made it certain under the record that (had it not been for the 2-4-D damage) the plaintiff would have grown a larger crop than that measured merely by the average yield of his neighbors, according to the rule ordinarily used to determine the amount of tort-caused crop damage. It was not error, therefore, to use instead the plaintiff's average yields in prior years as a guide in the determination of the amount of his recovery.
For, after all, one injured through the wrongful act of another is entitled to full indemnification for the damages caused thereby. LSA-Civil Code Arts. 2315, 1934 (3), 667. Where there is a legal right to recovery but damages cannot be exactly calculated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Brantley v. Tremont & Gulf Railway Co., 226 La. 176, 75 So.2d 236; Farthing v. Neely, La.App. 3 Cir., 129 So.2d 224, 239; Sutherlin Sales Co. v. United Most Worshipful, etc., La.App. 4 Cir., 127 So.2d 253; Harrison v. Petroleum Surveys, La.App. 1 Cir., 80 So.2d 153, certiorari denied.
In calculating the award, however, our learned trial brother erroneously based it upon a loss of 8,570.95 pounds of ginned cotton, as counsel for the appellant points out. This is the reduced amount of the plaintiff's yield actually harvested in 1953, and not the amount of the loss. Based upon his average per acre yield for the five years preceding, the plaintiff claimed by his petition only to have lost the lesser figure of 6,592.95 pounds of ginned cotton; the proof does not support a recovery based upon any larger loss of yield, although it does justify a finding of such loss based upon average yield of preceding years.
It is therefore necessary for us to recalculate the award and to amend the judgment accordingly.
The plaintiff's damages therefore are calculated as follows: In 1953, the plaintiff planted 25.5 acres of cotton (Tr. 53), upon which he should have netted 590 pounds of ginned cotton per acre, based upon his average yield in preceding years; that is, a total of 15,045 pounds. Since he actually harvested and sold only 8,570.95 pounds, the plaintiff sustained a net loss of 6,474.05 pounds of ginned cotton. The average market price for the year is proved to be $.34 per pound; the value of this loss of yield is thus $2,201.18.
However, the evidence also shows that for every 500 pounds of ginned cotton, a farmer averaged a yield of at least 850 pounds of cottonseed, which in 1953 was sold at $60.00 per ton (3¢ per pound). Tr. 68-70. Thus, in addition to the 6,474.05 pounds of ginned cotton, we may reasonably conclude that the plaintiff was also damaged by the loss of 11,005.89 pounds of cottonseed, the market value of which was $330.18.
From the total market value of the loss of the ginned cotton and the cottonseed, we must deduct the cost of harvesting and processing. The evidence shows that the cost of picking the unginned cotton was $2.00 per hundred pounds (i. e., 2¢ per pound). Since the total loss of unginned cotton amounted to 17,479.94 pounds (i. e., *424 the total of ginned cotton plus cottonseed), it would have cost plaintiff $349.60 to pick the portion of the cotton crop which did not mature due to the defendant's damaging the growing cotton. The cost of ginning cotton in 1953 was $.80 per hundred pounds of ginned cotton, and the cost per bale for bagging and ties was $6.75. Based on a total loss of 6,474.05 pounds of ginned cotton, the plaintiff would have expended $51.80 to have the cotton ginned, and $87.75 for the bagging and ties for the approximately 13 bales which he lost due to the defendant's damaging his cotton crop.
In recapitulation, the plaintiff was damaged by the loss of $2,201.18 in ginned cotton and $330.18 in cottonseed, for a total crop loss of $2,531.36; less harvesting and marketing costs totaling $489.15. Thus, the plaintiff's net loss was $2,042.21.
For the foregoing reasons, the judgment is amended so as to reduce the award to the plaintiff to $2,042.21, but it is affirmed in all other respects, at the cost of the defendant-appellant.
Amended and affirmed.