249 So.2d 181

David CHANEY

v.

The TRAVELERS INSURANCE COM-
PANY et al.

No. 50839.

June 7, 1971.

Concurring Opinion June 23, 1971.

Joseph F. Keogh, Parish Atty., John T. Caskey, Jr., Asst. Parish Atty., for. defendant-appellant-applicant.

Taylor, Porter, Brooks & Phillips, John S. Campbell, Jr., Baton Rouge, for defendants-appellants-respondents.

SUMMERS, Justice.

James Chaney instituted this suit in the City Court of Baton Rouge against the city of Baton Rouge, parish of East Baton Rouge and its contractor Jenkins Construction Corporation and the contractor's insurer The Travelers. Insurance Company for damages to his dwelling house. The petition alleges that Jenkins contracted with the City-Parish to enlarge the Melrose Canal and install two lines of large concrete drainage pipe. Exceptionally heavy equipment and machines were required to accomplish this result. While the work was being performed, vibrations from the use of the heavy equipment in close proximity to Chaney's house caused the interior sheetrock and plaster near doors and windows to crack with the resulting damage.

The parish of East Baton Rouge answered, denying liability to Chaney. On the basis of a hold harmless clause in the construction contract, the parish filed a third party demand against Jenkins and Travelers seeking judgment over against them in solido should the parish be cast; and, alternatively, the parish sought contribution against Jenkins and Travelers, should Chaney recover against the parish. By stipulation the city of Baton Rouge was deleted from the suit. It was also stipulated that the damage to Chaney's house was $792.

Travelers and Jenkins answered, admitting the contract with the parish and the performance of the work, but denied liability in the principal demand. Travelers and Jenkins then assumed the position of third party plaintiffs and prayed for judgment against the parish for indemnity, or, alternatively, contribution should Jenkins and Travelers be cast in the principal action.

The trial judge awarded damages in the amount of $792 to Chaney and against the parish in the principal demand, and judgment in favor of the parish in the same amount in its third party demand against Jenkins and Travelers. The third party demand of Jenkins and Travelers against the parish was dismissed.

On appeal to the First Circuit the judgment in favor of Chaney against the parish

was affirmed. The judgment in favor of the parish against Jenkins and Travelers in the third party demand was reversed and set aside, Jenkins and Travelers being exonerated of all liability in the premises. 238 So.2d 847 (La.App.1970). We granted writs on the parish's application.

The testimony at the trial convinces us that both the parish and the contractor were responsible to Chaney for undertaking this work within ten feet of Chaney's dwelling. A 100-ton capacity dragline, the largest in the Baton Rouge area, was used as an excavator to widen and deepen the existing canal and as a crane to place the concrete pipe sections in the channel. A back-hoe was also used in the excavation and in the placement of the large concrete pipe sections. The dragline and a tractor grader were used in the back fill operation. Each pipe section had an inside diameter of 10½ feet, a length of 8 feet and weighed 16 tons.

In the use of this heavy equipment no precautions were taken either by the parish or the contractor to minimize vibrations incident to the operations.

Dr. Capozzoli, an engineer specializing in foundation work, examined Chaney's house after the work was completed and found fresh cracks in the plaster and sheetrock of the walls and ceilings. He ascertained from the Department of Public Works the nature of the work carried on by Jenkins in the

canal. He observed a similar project in progress in another subdivision and was therefore familiar with the methods and equipment used. In his opinion the vibrations from the project activity caused the damage to Chaney's house.

We are satisfied with Dr. Capozzoli's qualifications, the facts upon which he based his opinion and his conclusion that the contractor's activity caused the damage.

█ The record discloses that the excavation, pipe-laying and back-filling were all accomplished within an existing right of way or servitude furnished by the parish to the contractor on which to perform the work. The construction project was not, therefore, the direct result of expropriation proceedings as defined by the legislature (La.R.S. 19:1 et seq.); nor was the damage to Chaney's house incidental to an expropriation proceeding conducted under statutory authorization or guidelines.

Article I, Section 2 of the Constitution announces the constitutional principle supporting legislation authorizing expropriation; it provides that "private property shall not be * * * damaged except for public purposes and after just and adequate compensation." Thus the damage here, since it has not been compensated as the Constitution directs, must be recovered by resort to other principles of our law allowing recovery in such instances. The contention is made that Chaney cannot re-cover, for no negligence or fault has been shown on the part of the parish or Jenkins. However, Chaney's recovery can be sustained under Article 667 of the Civil Code which provides:

> Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

█ In the beginning it is necessary to note that the Court of Appeal erroneously considered itself bound by what was considered to be the majority decision in Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (1970) declaring that Article 667 of the Civil Code is inapplicable in instances where an owner's activities on his property causes damages to adjacent owners. The author of the Reymond opinion declares that Article 667 is only applicable to "structural changes in or on the land, and it is the existence of the thing, the construction, or the change upon the estate which must give rise to the damage," not the activity on the property. There is, in fact, no majority opinion by this Court in the Reymond Case on the reasons for judgment, only on the result reached. One justice concurred in the result, meaning he did not subscribe to the language or rationale of the opinion, only the result, while three other members of the

court dissented from that portion of the opinion rejecting recovery under Article 667 on account of damage from activity on adjoining property.

■ Moreover, the Reymond Case was not decided under the authority of Article 667, but was decided, instead, under principles of expropriation. Any statements relating to Article 667 are therefore dicta. Furthermore, we do not agree that we should follow the interpretation placed upon Article 667 by the opinion in Reymond. Instead, we adopt the dissent of Mr. Justice Sanders in that case, where he said (255 La. 425, 465, 231 So.2d 375, 389):

Although reliance upon Article 667 of the Louisiana Civil Code is unnecessary for recovery in the present case, I must note that the language of the majority opinion unsettles the prior jurisprudence construing this Article. The majority (sic) advances the opinion that Article 667 applies only to buildings, edifices, structures, levees, and other structural changes in and on the land that produces damage to the neighbor. It restricts the Article to only one category of estate use, undermining the assumption that the Article serves as a statutory base for the *sic utere* doctrine. (So use your own as not to injure another's property.) In so doing, the majority repudiates the rationale of the following decisions: Devoke

v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (refueling of locomotives causing smoke); Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (pile driving); Gulf Insurance Co. v. Employers Liability Assur. Corp., La. App., 170 So.2d 125 (pile driving); Hauck v. Brunet, La.App., 50 So.2d 495 (pile driving); Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So. 2d 845 (subterranean explosion in oil exploration); Wright v. Superior Oil Company, La.App., 138 So.2d 688 (subterranean explosion in oil development); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (aerial dusting of crops with insecticides); Trahan v. Bearb, La.App., 138 So.2d 420 (aerial dusting of crops with insecticides). See also Dainow Property, 21 La.L.Rev. 294–295; Stone, Tort Doctrine in Louisiana: The obligations of Neighborhood, 40 Tul.L.Rev. 701.

The sole basis for repudiating the rationale of these decisions is the example of "works" given by Domat, a French legal scholar whose writings contributed substantially to the Code Napoleon. It is to be noted, however, that the illustrations used by Domat have been made the subject of specific articles in the Louisiana Civil Code. See LSA C.C. Arts. 691–698. It seems doubtful that these examples were designed as a limitation upon the neighborhood concept.

Writing in 40 Tul.L.Rev. 701, 705–706, Dr. Stone states:

"It is obvious that the passages cited from the Roman law by Domat list the type of 'works' which were the most usual sources of damage to neighbors in that day. Domat himself gives as examples a roof which protrudes over and discharges water upon a neighbor's land, the failure to leave proper distances between structures, the placing of stoves and fireplaces against a common wall; but he quite wisely continues by saying that with regard to those works by which damage might result and which one ought not to be able to do except at a certain distance from the neighbor and with proper precautions, these ought to be governed by rules laid down by the customs and usages of the place. Louisiana has made these more precise by articles 692 through 695.

"The important thing is that these are only illustrations of the type of 'works' which at the time of the adoption of the Code could be expected to damage one's neighbor. The listing was never intended to be exclusive. The list grows as the society develops. The world of the Romans or that of Domat did not contemplate the use of dynamite in conducting geophysical explorations, the use of pile-driving equipment to prepare a foundation for buildings, the operation of jet planes over residential areas, the dusting of crops by airplanes, the operation of huge factories, the storing or use of radioactive materials. As man's ingenuity in creating works upon his lands and in conducting operations thereon has increased, so has his capacity to cause harm to his neighbors, with the corresponding necessity for regulation in the interest of the good of all."

Dr. Dainow also writes:

"Article 667 of the Civil Code provides for the legal servitude that one property may not be used in such a way as to cause damage to another. There are also principles of tort law which impose liability on a landowner for damage caused to another—sometimes based on fault or negligence, sometimes as a strict liability. This multiplication of devices permits the court to have a greater range of flexibility in the handling of specific cases and in directing the development of the law concerning responsibility where both damage and causality are proven."

Adding to the overwhelming argument against the interpretation of Article 667 expressed in the Reymond Case are these comments by Professor Yiannopoulos:

While the literal interpretation of Article 667 in the light of its historical

...sources might leave room for the view that the word "work" means merely "constructions," a teleological interpretation of the same article leads to the conclusion that the word "work" ought to include "acts." In other words, as a matter of policy, it is preferable to apply article 667 to all situations in which constructions or activities cause unwarranted harm to property. The contrary view would not only unsettle Louisiana jurisprudence and would write out of the Code the *sic utere* doctrine, but it would eliminate a most important legislative basis for civil responsibility and result in unnecessary importation of a common law tort doctrine.

For almost two centuries, Louisiana courts, following an uninterrupted civilian tradition, have understood article 667 to establish the *sic utere* doctrine and to cover constructions as well as activities on an estate that cause unwarranted harm to another estate. It is true, of course, that courts have not always been consistent in the application of article 667, and that this article has been said to establish liability for negligence, liability without fault, and even quasi-contractual liability. In this respect, there is room for clarification and for a much needed improvement of the law, but it is an unacceptable solution to suppress the article and to sweep the old cases "under the rug." (31 La.L.Rev. 221 [1971]).

See also Hardy, Mineral Rights-Correlative Rights, 31 La.L.Rev. 263, 282 (1971).

Our view will not accept the proposition that a proprietor is responsible for damage to a neighbor for a "work", that is, a structure on his premises which harms his neighbor without imposing a like responsibility for harmful activity.

■■ Article 667 is therefore a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of *sic utere*. An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. This being ascertained, it remains only to calculate the damage which ensued.

■ And the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who, as in this case,

becomes solidarily liable with the proprietor if his activity causes damage to a neighbor.

Under these concepts we find the parish and Jenkins and his insurer, liable in solido to Chaney.

The parish's third party demand against Jenkins for indemnification on account of the hold harmless clause in its contract presents the final issue. The clause states:

It is further agreed that the contractor shall hold owner free and harmless from all claims or damages to persons and/or property that may arise out of or by reason of the performance of the work * * *.

Since Article 667 of the Code imposes liability on the parish for damages "that * * * arise out of or by reason of the performance of the work," this hold harmless clause compels Jenkins and its insurer to indemnify the parish to the extent of the parish's liability.

For the reasons assigned, because Chaney did not apply for writs, judgment is rendered in favor of James Chaney, against the parish of East Baton Rouge, only, in the sum of $792. It is further ordered that there is judgment in favor of the parish of East Baton Rouge on its third party demand against Jenkins Construction, J. H. Jenkins Contractor, Inc., and their insurer or indemnitor for indemnification in any amounts which the said parish shall pay unto James Chaney on account of the judgment rendered herein.

TATE, Justice (concurring).

We granted certiorari on the defendant parish's application. The only question before us is that presented by such pleading: Whether the parish is entitled to indemnification against Jenkins, the contractor and its insurer.

The indemnification clause of the construction contract between the parish and Jenkins provides "that the contractor [Jenkins] shall hold owner [the parish] free and harmless from all claims or damages to persons and/or property which may arise out of or by reason of performance of the work * * *".

The damages here clearly arose out of and by reason of the performance of work contracted. Under this indemnification agreement, without more, the contractor Jenkins is in my opinion clearly liable to the parish for damages recovered from it by Chaney, the original plaintiff. It is not necessary, therefore, for this court to consider the possible application of Article 667 of our Civil Code to the liability of the parish to Chaney, nor for us to reconsider now the correctness of our decision in Reymond v. State, 255 La. 425, 231 So.2d 375 (1970).

Further, however Article 667 is interpreted insofar as to the extent of *property*

servitude is concerned, I do not think that such interpretation is necessarily applicable in determining what constitutes "fault" under Article 2315 so as to give rise to a cause of action against the fault-doer. By analogy, from the general principle of Articles 667–670, we may well conclude that an adjacent owner may recover damages caused him by activity on neighboring land, whether by the owner *or* another, such being "fault". See Langlois v. Allied Chemical Corp., 256 La. 877, 239 So.2d 539 (docket No. 50,852 rendered this date). I would be inclined so to hold, were we here concerned with a basis for liability of the parish *and* Jenkins to Chaney. This is not an issue before us, however.

Since much of the discussion in the majority opinion is dicta, I do not join in it except to the extent I have above indicated. It seems to me preferable that we decide the application of 667 and other articles, directly or by analogy, to an instance when such issue is actually presented to us.

I therefore respectfully concur.

BARHAM, Justice (concurring).

I agree with Mr. Justice Tate in his concurring opinion and assign these additional reasons.

The writer of the majority opinion, apparently in a primary concern with and anxiety to write upon the holding in Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375, in its application of Civil Code Article 667, has ignored the only issue presently before the court and resorted to dicta. The majority opinion, when reduced to its essentials without dicta, consists of a portion of one sentence, to-wit: " * * * this hold harmless clause compels Jenkins and its insurer to indemnify the parish to the extent of the parish's liability." The majority has used a simple suit for contract interpretation to expound upon an issue foreign to the case. The basis for the parish's liability to the plaintiff is not germane to a determination of the relator's rights to indemnification under this succinct and explicit save and hold harmless clause. Liability between the plaintiff and the defendants was determined below, has not been made a matter of appeal, and is not an issue before this court.

Adopting the ancient sic utere doctrine, "so use your own as not to injure another's property", the majority in dicta through its many quotations from doctrinal writings actually states a much broader principle than sic utere—that is, damage resulting from certain activities on *any* property creates liability not only to adjacent property and property owners but also to those who have *no* proprietary rights. Mr. Justice Sanders' dissent in Reymond and the majority opinion here, which quotes with approval from that dissent, adopt the ra-

tionales of case after case which are far broader than the sic utere doctrine. Lip service is given to the doctrine, but in actual application the limitations implicit in it are repudiated. The majority here, after adopting Article 667 as embodying the sic utere doctrine and stating its obvious limitation to "the rights of *proprietors* in the use of their property", states that "This liability which the law imposes attaches also to *the agent or contractor*, who, as in this case, becomes solidarily liable with the *proprietor* if his activity causes damage to a neighbor". (Emphasis mine.) The majority cites no law for this latter holding, and certainly it cannot find such authority in Civil Code Article 667 or in the sic utere principle.

Reymond was simply the beginning of an attempt to establish a rational basis upon which we could, without distortion of the codal provisions, determine the liability in cases involving inherently dangerous constructions and ultra-hazardous activities. The jurisprudence of this state long before Reymond had repudiated in fact the strict application of the sic utere principle: The neighborhood had been broadened, the exclusively proprietary interest had been discarded, and our courts had repeatedly reached results which removed the restrictions inherent in that doctrine.

Langlois v. Allied Chemical Corporation, No. 50852 on our docket, this day decided, 256 La. 877, 239 So.2d 539, applies the Reymond principle. It is an enunciation of the only principle which will uniformly reach the result apparently desired by the majority in this case. It place the delictual responsibility for the ultra-hazardous activities and enterprises of man under Civil Code Article 2315 and eliminates the former restrictions necessarily imposed when Civil Code Article 667 was literally applied. It removes the strictures which forced this court in the past to disregard what it had held to be positive codal law in order to reach what it found to be the Code's positive intent. It permits full use of the civilian jurisprudential technique and our Code.

I concur only in the holding that the save and hold harmless clause indemnifying against all claims "that may arise out of or by reason of the performance of the work" required the insurer of the contractor to indemnify the parish from liability for damages arising out of the performance of the work.