ELLIS, Judge:
This case, which is consolidated with Vie Stewart v. Highlands Insurance Company, No. 9865, arises out of an accident which happened at the intersection of Stumberg Lane and Jack’s Bayou in Baton Rouge. Stumberg Lane is a dead end street, and access to the houses toward the north end was possible only by crossing a wooden bridge over Jack’s Bayou.
Harold E. Picou and Mrs. Vie Stewart, in Mr. Picou’s car, had crossed that bridge on the morning of December 5, 1971, on their way to visit a friend and business associate. They remained at his home until about 1:00 o’clock on the morning of December 6, when they left to return home. It was raining, and had been raining almost all day. When they arrived at Jack’s Bayou, the bridge had been washed out, and Mrs. Stewart, who was driving, was unable to avoid driving into the Bayou.
At the time of the accident, Jack’s Bayou was being widened and deepened as part of a drainage improvement project. The contractor for that part of the project was Jenkins Construction Corporation, under a contract with the Parish of East Baton Rouge, the responsible governmental subdivision.
These suits were filed against Jenkins, Highlands Insurance Company, its insurer, the Parish of East Baton Rouge, and two other parties no longer involved in the case. The Parish filed a third party demand against Jenkins and Highlands for indemnification under an indemnity clause contained in their contract. After trial on the merits, judgments were rendered in favor of Harold E. Picou for $109,916.79, and in favor of Vie Stewart for $6,215.50. All three of the above named defendants were cast in solido in the suit, and judgment was rendered in favor of the Parish on its third party demand against Jenkins and Highlands for indemnification under the contract. From those judgments, all defendants have appealed. Although Mr. Picou in brief requests an increase in the award as to him, he has neither appealed nor answered the appeal and is not entitled to the relief sought.
In this court, Jenkins and Highlands raise only the question of their liability to the Parish under the indemnity clause of their contract. The Parish raises the question of the contributory negligence of Mrs. Stewart, objects to the finding that it was negligent, and asks for a reduction of the awards to Mr. Picou and to Mrs. Stewart.
There is no dispute as to the facts of the case. As mentioned above, Jack’s Bayou was being widened and deepened by Jenkins under a contract with the Parish. The new bed of the Bayou was to be about 11 feet deeper than the old bed. Dredging of the Bayou had been carried out to a point about 50 feet below Stumberg Lane bridge. It is conceded that it would have been better practice to stop the dredging 200 to 300 feet from the bridge because of the danger of erosion. Since the contract called for a new bridge to be built at Stumberg Lane, a temporary by-pass was being built, just upstream, consisting of a dirt ramp with two large culverts through it to allow water to flow in the Bayou. Although the ramp was complete, it had not been surfaced, and was not open to traffic.
The Stumberg Lane bridge was wooden, and rested on a large sill set out on either bank of the Bayou. The sills, in turn, were each supported on five 12 foot pilings. No one was able to testify with certainty when or by whom the bridge had been built, nor was anyone aware of the length of the pilings used in its construction, although some of the Parish personnel knew that there were bridges of similar construction in East Baton Rouge Parish.
Heavy rains during the weeks preceding the accident had caused the bed of the stream to erode upstream from the point where the dredging had stopped 50 feet below the bridge. This erosion continued until all of the pilings were exposed, causing *310 the bridge to collapse sometime on the night of December 5, 1971.
Both the Parish and Jenkins had been notified of the erosion and the danger of the collapse of the bridge by James Jof-frion, a civil engineer who lived near the bridge. Each of them sent inspectors to examine the bridge and its foundations, but neither inspector felt there was any immediate danger. Mr. Evans, an engineer with Jenkins, testified that about 10 feet of the pilings were exposed when he looked at it on the day before the accident, but that he felt there was no danger because he assumed that the pilings were 20 feet long. He stated that had he known the length of the pilings, he would have closed the bridge immediately. No inquiry was made nor tests conducted to ascertain the length of the pilings by anyone connected with either Jenkins or the Parish. The Parish did notify Jenkins of the call it had received from Joffrion.
When Mr. Picou and Mrs. Stewart left their friend’s house to return home, it was raining hard. Both of them testified that Mrs. Stewart was driving carefully, with headlights on and windshield wipers operating. They encountered no warning signs or devices of any type. Mrs. Stewart testified that she did not see that the bridge was gone until it was too late to stop the car.
Parishes have the general duty to maintain the roads and streets in their jurisdictions in a reasonably safe condition. They must repair or make safe, or protect the public from, any defects in the road of which they have actual or constructive notice which expose the public to unsafe travelling conditions. LeBlanc v. Parish of East Baton Rouge, 271 So.2d 634 (La.App. 1 Cir. 1972) In this case, we have no difficulty in finding that the Parish had actual notice of the erosion at the Stumberg Lane bridge, and that it should have discovered the potentially hazardous condition which existed.
The Parish contends, however, that it discharged its duty to the public by notifying Jenkins of the erosion at the bridge. We find no merit in this contention. The obligation of the Parish exists by operation of law, and cannot be discharged by the act of contracting it to a third party.
We find no contributory negligence on the part of Mrs. Stewart. Absent warning signs to alert her to the hazard ahead, she had no reason to anticipate that a bridge over which she had driven a few hours earlier would no longer be in place. She was driving at a reasonable rate of speed, with headlights on and windshield wipers operating. There is nothing in the record to indicate that she should have seen the hazard any sooner than she did.
We turn now to the question of the liability of Jenkins and Highlands to indemnify the Parish under the contract between them for losses such as this. It is contended that, because of the independent negligence of the Parish, it is not entitled to the benefits of the indemnity clause in the contract.
The indemnity clause in the basic contract reads as follows:
“It is further agreed that the Contractor shall hold the Owner free and harmless from all claims of damages to person and/or property that may arise out of or by reason of the performance of said work, or due to the negligence, commission or omission of any act by Contractor, his employees, agents or sub-contractors.”
Jenkins and Highlands rely on our holdings in Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1 Cir. 1967), and Strickland v. Nutt, 264 So.2d 317 (La.App. 1 Cir. 1972). In the Arnold case, we held:
“The general rule is stated thus: ‘A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own neg *311 ligent acts, where such intention is not expressed in unequivocal terms. . .
In the Strickland case, we applied the same rule to a case in which the concurrent, active negligence of the indemnitor and indemnitee caused the injury complained of.
We find neither of those cases applicable to the fact situation presented here. In this case, the bridge collapsed because Jenkins had terminated his dredging operations too close to the bridge, when it was foreseeable that erosion would take place. Under the terms of the contract, Jenkins was specifically obligated to protect against the type of accident which happened in this case, which obviously arose out of the improper performance of the work contracted. The indemnity clause specifically covers this situation, and we believe the independent negligence of the Parish, which is passive in nature, is immaterial. See Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971).
We turn now to the question of the award made to Mr. Picou. In the accident, he suffered contusions of the face, chest and both legs and knees. He suffered from pain in his neck which was treated for two and one half weeks with heat and traction. In addition, he suffered a torn meniscus of the left knee, and chon-dromalacia of the left patella. He was operated on and the torn meniscus was removed. He wore a leg cast for three weeks after the operation.
In August, 1972, Mr. Picou suffered a twisting type injury to his right knee which was suffered when his left knee collapsed. The collapse of the left knee was directly attributed to the accident by the treating physician. In March, 1973, a torn medial meniscus was surgically removed from the right knee.
As a result of these accidents and the surgery, Mr. Picou suffered a residual disability of 15% in his left knee and 10 to 15% in his right knee. He continues to suffer severe pain and his left knee occasionally locks or gives way, which is unusually painful.
Mr. Picou earned his living as a carpet and floor covering layer, and had worked as a carpenter. As a result of the injuries to his knees, he is unable to work in either capacity, and had been unemployed since the accident except for a very few abortive attempts to work.
At the time of the accident, Mr. Picou was 34 years old. His average gross earnings from 1967 through 1971 was $3,965.65 per year, and he had a work life expectancy of 29.5 years. Expert testimony was introduced relative to the value of his future earning capacity.
Based on the above evidence, the trial court awarded Mr. Picou $20,000.00 for pain and suffering, and $85,000.00 for loss of earning capacity, plus special damages. We find this award to be within the discretion of the trial court.
Mrs. Stewart suffered a cervical sprain, a laceration on her chin, and various contusions. She wore a cervical collar for about two months, and was treated by a physician for about eight months. She suffered from headaches and stiffness during this period, although they decreased in severity as she progressed. She testified that, except for occasional neck stiffness in the morning, she was fully recovered by the time of the trial. The trial judge found a noticeable scar one and one half inches long on the left side of her chin. Mrs. Stewart testified that she was unable to do her work or house work for about six weeks after the accident. The trial court awarded her $6,000.00 plus special damages, and we find this award to be within the bounds of his discretion.
JUDGMENT IN NO. 9864
The judgment appealed from is therefore affirmed, with costs to be shared equally by appellants.
Affirmed.
*312 JUDGMENT IN NO. 9865
For reasons above assigned, the judgment appealed from is affirmed, with costs to be equally shared by the appellants.
Affirmed.