BEER, Judge.
This suit arises from actions of defendants-appellants Salmen Company (hereafter, Salmen) and Sizzler Family Steak Houses of Southern Louisiana, Inc. (hereafter, Sizzler) which allegedly caused damage to a building owned by plaintiff-appel-lee-appellant, Mrs. Agnes M. Braud (hereafter, Mrs. Braud) when Salmen and Sizzler renovated property owned by Salmen and leased to Sizzler.
Both Mrs. Braud and Salmen derive ownership of their property, which has a common wall, from a common ancestor in title, Victory Land Company.
Mrs. Braud’s ownership is from an inheritance from the estate of William Murphy, vendee of Victory. In the sale from Victory to Murphy (as well as in the sale from Victory to Salmen’s ancestor in title) there is an agreement which grants the successor in title, his heirs and assigns a conventional servitude of support for the wall, roof, and improvement of the property acquired. The agreement further provides that each individually owned building, separated by the common wall which *387 divided the property owned by Mrs. Braud from the property owned by Salmen, could be removed by either owner if the party, choosing to so act, bears the responsibility of the damage he may cause to the remaining building on the other side of the common wall.[1] Mrs. Braud sues Salmen under this provision seeking reimbursement for the damage allegedly done to her property when Salmen leased its property to Sizzler and consented, in conjunction with the lease, to have its existing building (which shares the common wall with Mrs. Braud’s building) demolished by Carrollton Lumber & Wrecking Company, Inc. (hereafter, Carrollton) so that Sizzler could build a steak house. From a judgment against Salmen and Sizzler finding them jointly liable by virtue of the agreement noted above, those defendants appeal. Mrs. Braud also appeals seeking recovery against Carrollton and its insurer since her original suit against them was dismissed by the trial court.
The buildings in question are steel framed with sheet metal roofing and siding except for the common brick wall. Mrs. Braud contends that the support of the common wall was weakened when Salmen, Sizzler and Carrollton, in demolishing the Salmen building, cut supportive beams that formerly ran through both buildings. As a consequence, the common wall (which then became the exterior wall of the Braud building) could not withstand any substantial wind velocities and threatened collapse unless corrective measures were taken. She further contends that the Salmen, Sizzler, Carrollton demolition has necessitated waterproofing of the wall which, now an exterior wall, is exposed to the elements. Finally, she contends that the demolition created a need to replace certain sheets of torn or damaged metal plus broken windows on another side of her building along with the need for a new gutter spout and other repairs.
All defendants admit the existence of the agreement noted above as well as the lease by Salmen to Sizzler and the fact that the demolition was done by Carrollton for the account of Salmen and Sizzler.
As a result, of the conditions noted above, Mrs. Braud contracted with Bartley, Inc. to perform the repairs which she now alleges were necessary to restore structural and watertight integrity to her premises. This included several separate types of repair work: (1) bracing the existing masonry wall; (2) waterproofing the existing masonry wall; (3) cutting of existing steel members that apparently jutted out; (4) site paving; (5) repairs to existing metal siding and roof; and (6) repairs to existing concrete floor.
The record supports the trial court’s finding that bills and invoices for this work total $11,355.02.
The trial court rendered judgment dismissing Mrs. Braud’s claim against Car-rollton and its insurer but granted judg *388 ment in favor of Mrs. Braud against Sal-men and Sizzler in solido, in the sum of $11,355.00, together with legal interest from the date of judicial demand and for all costs, and dismissed certain cross claims that are not involved in this appeal.
Salmen and Sizzler appeal from the judgment against them and Mrs. Braud appeals from that portion of the trial court’s judgment which dismisses her claim jointly against Salmen, Sizzler and Carrollton (and insurers) allegedly arising from recent interpretations of the applicability of LSA-C.C. Article 667 by the Supreme Court of Louisiana and by this court in cases allegedly similar to this one.
In the trial court’s reasons for judgment, the provisions of Article 667 were held to be inapplicable as to Carrollton and relief to Mrs. Braud against Carrollton was denied. Article 667 provides:
“Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
In Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971) the Supreme Court reviewed previous considerations of this Article and concluded:
“Article 667 is therefore a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor’s property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. This being ascertained, it remains only to calculate the damage which ensued.
“And the proprietor is likewise responsible not only for his own activity, but also for that carried on by his agents, contractors and representatives with his consent and permission. This liability which the law imposes attaches also to the agent or contractor, who, as in this case, becomes solidarily liable with the proprietor if his activity causes damage to a neighbor.”
Chaney was thereafter cited by this court in D’Albora v. Tulane University et al., 274 So.2d 825 (La.App. 4th Cir. 1973) writ denied La., 278 So.2d 504, when we observed that:
“It must be noted that in fact neither agent nor contractor was involved in Chaney, and accordingly the quoted language is not a holding which we are obliged to follow without further examination. But apparently a majority of our supreme court is of the view that art. 667 is a basis to hold not only owner but ‘agent or contractor1 as well.” (Emphasis ours.)
Thus, the trial court’s rejection of the applicability of Article 667 to the claims against Carrollton is vigorously questioned by Mrs. Braud. She contends that if the Salmen, Sizzler, Carrollton activities did cause damage to her property, this fact alone would be sufficient for recovery against Salmen, Sizzler, and Carrollton. The trial court, concluding otherwise, imposed joint and solidary liability upon Sal-men and Sizzler but declined to hold Car-rollton liable under Article 667.
The trial court was correct in its conclusion that “. . . either owner (or his assignees, heirs, etc.) had the right, at any time, to remove the improvements on his respective property provided that he do so at his own expense and provided further that he was responsible for any damages caused by such removal.”
*389 We agree, also, with the trial court’s factual determination that “. . . it would have been almost impossible to remove either portion of [the] common building without creating the conditions which were brought about. . . . ”
However, the creation of “the conditions that were brought about’’ is not, necessarily, entirely covered by the wording of the agreement that governs the obligation which Salmen had to Mrs. Braud. That agreement made Salmen responsible for “damages . . . caused by such removal.”
We find that a definite issue exists here as to whether or not the entire claim by Mrs. Braud can properly be held to be damages caused by such removal. Further, we conclude that there is considerable merit to the contention by able counsel for defendants-appellants that the cost of converting the remaining building into a complete, watertight, wind resistant, structurally improved entity goes somewhat beyond the obligation to repair damages caused by removal of the Salmen building. Yet, the record contains no clear line of demarcation for us to follow in allocating such costs and it is apparent that a fairly substantial percentage of the overall expenditure made by Mrs. Braud could be attributable to the damages caused by the demolition. In view of the fact that defendants-appellants made no showing on the record that would substantiate or support any sort of percentage allocation or other means or methods of delineation, we cannot conclude that the trial court was manifestly in error in making the quantum award in the amount of $11,355.00.
The state of the record with respect to the possible differentiation between the effective renovation of the Braud building compared to the repair of damages caused by the Salmen building demolition also causes us much concern regarding the status of Carrollton. Had Carrollton’s demolition—in and of itself—caused unanticipated and non-indemnifiable (by the agreement) additional damage then we would be obliged to hold that Carrollton cannot properly be excluded from a finding of some ' liability in the particular circumstances of this case. Chaney, as noted by us in D’Albora, would apparently require us to extend the applicability of 667 liability to Carrollton for the damages which they actually, independently caused. The “apparent view” of the Supreme Court (which we discuss in D’Albora) is, as far as we are able to perceive, now even more apparent as a result of their decision in Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973). But there is no basis for concluding that Carrollton damaged the Braud building within the definition announced in Lombard. Carrollton only demolished the Sal-men building to within eighteen inches of the common wall in accordance with its commitment to Salmen and Sizzler. The record discloses no 667 type damages in the performance of this contractual commitment. The - so-called damages that Sal-men was contractually responsible to repair were anticipated and reckoned with in the previously noted agreement. Likewise, that same contracted for exposure was also assumed by Sizzler in its lease agreement with Salmen when it contractually agreed to be responsible for “. . . all liability and damages occasioned to any person or persons resulting from such demolition. .” (emphasis ours).
Thus, all of the “damages” that are shown to be collectible are collectible from Salmen and Sizzler as a direct result of their various contractual committments and not due as a result of 667 type liability. Since Carrollton had no contractual exposure to Mrs. Braud, the trial court did not commit error in exculpating them (and their insurers) from liability.
Though it is not essential to the conclusion noted above, we agree with Mr. Justice Barham in his concurring opinion in Lombard where he concludes *390 that parties other than proprietors are not made responsible for non-negligent acts under 667 and can only be cast for damages if they are negligent. Since no such showing has been made in this record regarding Carrollton’s activities their dismissal on the grounds outlined in Justice Bar-ham’s concurrence would also be proper.
The judgment is affirmed, each party to bear its own costs of this appeal.

Affirmed.

REDMANN, J., dissents.

. The specific wording of the agreement is:
“The vendor and its assigns hereby grant unto the purchaser, his heirs and assigns, a servitude of support for the sides and roof of the building and improvements on the premises herein conveyed and sold, facing and fronting on the Short Street and Edinburgh Street sides of the property, as shown by the attached survey, and while and for as long as the said building and improvements remain on said property.
“The vendor and its assigns and the purchaser, his heirs and assigns shall at any time have the right to remove the portion of the common building erected and forming the improvements on his and its respective properties, at the expense of the party who makes such removal, provided that any damages to the property of the other caused by such removal, shall be borne by the party causing said damages.
“The vendor and its assigns and the purchaser, his heirs and assigns, agree that each party shall keep his or its portion of the roof of the common building in a state of satisfactory repair so as not to damage or cause harm to the portion of the roof of the other, provided that if any such damages be caused (other than ordinary wear and tear) the party causing said damages shall bear the cost of said damages.”