JONES, Judge.
Plaintiff appeals a judgment rejecting its demands for damages allegedly sustained to 9 acres of its subdivision by the defendant’s construction of a 4½-⅛⅛ high-pressure natural gas pipeline 12y2-feet north of the north line of the subdivision for a distance of approximately 1600-feet along the north side of the subdivision. Plaintiff was advised at trial by testimony introduced by defendant that approximately 100-feet of this line was actually constructed in the subdivision across a small triangle 65 X 73 X 100 feet located in the very northwest corner of the subdivision. The trial court construed the evidence of the construction of the pipeline in plaintiff’s subdivision to constitute a C.C.P. Article 1154 amendment to the pleadings and awarded plaintiff damages for this taking in the amount of $1,200 and assessed all court costs to defendant. Defendant appealed the judgment against it.
On July 30, 1976 defendant, in an expropriation proceedings, acquired a 25-foot right of way along the north line of plaintiff’s subdivision and completed construction of a 4½-⅛⅛ gas pipeline in the right of way in September, 1976. Plaintiff commenced development of its subdivision in 1967 and had sold 23 lots by September, 1976.
Plaintiff contends that the existence of the gas line along the north boundary of its subdivision depreciates the value of its property. It contends because people fear an accident may occur in connection with the line, they will no longer purchase lots in an area within 400-feet of the pipeline. Plaintiff contends defendant is depriving it of the right to utilize its property adjacent to the pipeline as a subdivision, contrary to the prohibition contained in LSA-C.C. Art. 667:
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
ISSUES
The issues are: (1) was the trial court correct in rejecting plaintiff’s claim for damages based upon the contention that the existence of the pipeline made the acreage of the subdivision adjacent to it unsuitable for home sites? (2) was the trial court correct in awarding $1,200 damages for defendant’s trespass and taking for the pipeline by considering the pleadings amended by defendant’s evidence that the pipeline crossed upon the subdivision? and (3) did the trial court abuse its discretion when it assessed the defendant with all cost?
The trial court made the following statement in rejecting the primary demands of plaintiff:
“This court concludes that the damages sought by plaintiff as the result of the construction of the gas pipeline are only speculative and have no merit.”
This pipeline was a gathering line used solely for the purpose of delivering gas produced from one well to defendant’s main line. The line was constructed with carefully cleaned, treated and wrapped pipe of 2,100 pounds per square inch capacity and was tested to 1,600 pounds per square inch and normally operated under pressure of 240-250 pounds per square inch. The welds were x-rayed to assure their quality and the line was equipped with anti-corrosive features. Operators of the gas line check it frequently.
Plaintiff does not contend that the line was not properly installed, nor does it make any complaint about the manner in which the line is being operated. Evidence establishes construction of the line was well supervised and it far exceeds the specifications required by the U.S. Department of Transportation and the Louisiana Department of Conservation.
Plaintiff established there had been numerous pipeline explosions, several in the State of Louisiana, one in Natchitoches Parish, adjacent to Red River Parish where the subdivision is located. It contends because *795 of these occurrences and the publicity given to the damages and deaths caused from them, people are afraid to construct their homes in the proximity of high-pressure natural gas lines. It asserts that the 9 acres of its subdivision adjacent to the gas line could only be used for growing pine timber. Plaintiff had two witnesses who had little appraisal experience, but substantial knowledge of . real estate values in the area, who testified the 9 acres adjacent to the pipeline were no longer available for subdivision lots. Plaintiff had one witness with substantial appraisal experience who testified the property before the construction of the pipeline was worth $4,166 per acre for use as home sites and that following the construction of the pipeline was worth only $200 per acre for growing pine timber.
These witnesses all expressed the opinion that because of the existence of the pipeline, people would not buy lots for home sites because they were well aware of the dangers inherent in a high-pressure gas line. Plaintiff also offered the testimony of a psychiatrist who expressed the opinion that a minority of people who were aware of the prior pipeline explosions would be reluctant tó purchase a home site adjacent to a 4V2-inch pipeline.
Defendant offered testimony of a highly qualified expert appraiser who testified the existence of defendant’s pipeline adjacent to plaintiff’s subdivision would have no effect upon the value of the plaintiff’s lots because people would not decline to purchase them because of the existence of the pipeline. Testimony of this witness was well reasoned and logical and based upon a thorough study of other subdivisions constructed in the proximity of high-pressure pipelines. This witness made a study of an exclusive townhouse subdivision on the south side of the City of Shreveport which was constructed around an existing 20-inch high-pressure gas transmission line. The only adverse effect that the gas transmission line had upon this development was the inability of the developer to construct houses upon the pipeline right of way. The right of way was used for the construction of streets, parking areas and tennis courts. The homes were constructed within a very few feet of the edge of the right of way and those closer to the right of way were sold for comparable prices and just as fast as the homes constructed at a further distance from the right of way. The study revealed in many cases the houses adjacent to the pipeline were the end unit of a group of houses and those next to the right of way commanded a premium over other houses in the unit. The study further revealed that the location of the houses next to the right of way did not adversely effect their resale. Many of the initial purchasers of those homes later sold them at a good profit.
This witness found similar results on another south Shreveport subdivision traversed by a high-pressure Texas Eastern products line. Thirty-two of the lots in this subdivision sold for $100 per front foot, one of the $100 per front foot lots had the pipeline easement on the lot and while no consideration was given for the pipeline easement, the existence of the easement in the lot did not have the effect of decreasing the lot price. Another lot in the subdivision which had one line included within the lot sold for $104.56 per front foot. Although nothing was paid for the pipeline easement, the existence of the line did not detract from the price of the lot.
This expert made a study of a subdivision in the City of Baton Rouge, Louisiana constructed around an existing pipeline right of way that contained two petroleum products pipelines. The developer of this subdivision advised the appraiser that lots backing up to the pipeline had no buyer resistance either from builders who would buy the lots for speculative building of homes or to home buyers to whom he would sell. The house buyers preferred the houses built on lots backed up to the pipeline because that prevented other houses from being built upon property adjacent to their rear property lines. Two of the average lots in this subdivision located on the pipeline sold for $7,800 each and one larger lot immediately adjacent to the pipeline sold for $15,- *796 400. The appraiser made the following observation about the effect of a third line that was being installed in the right of way at the time of his study:
“It is also interesting to note the construction continued on the lots backing up to the pipeline even though there is at present construction on the third pipeline going into the right of way space. The homes that are built in this area are selling just as fast if they back up to the pipeline.”
This appraiser’s study of the effect of high-pressure natural gas and petroleum products pipelines upon a subdivision contains pictures and plats, all of which fully support his conclusions that defendant’s line adjacent to plaintiff’s subdivision will not decrease the value of the lots in the subdivision.
One of defendant’s witnesses who testified he had performed anti-corrosive protection work upon the pipeline at the time it was installed testified he lived in a subdivision in the City of Shreveport through which runs an 8-inch products (gas and jet fuel) transmission line. Homes in the $100,-000 class range are located within 50-75 feet of each side of this pipeline. The subdivision was constructed subsequent to the installation of the pipeline. Another of defendant’s witnesses who testified concerning the disposition of the gas transmitted in defendant’s line stated that one of the largest and newest subdivisions located in the City of Pineville, Louisiana was bisected by a 16-inch high-pressure gas pipeline and the subdivision contained homes in the $50,-000 plus range.
Plaintiff contends the trial court erred because it failed to follow the decision of Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975) wherein the supreme court reversed a decision which sustained an exception of no cause of action to a petition for damages caused to plaintiff’s land adjacent to defendant’s right of way wherein a 24-inch high-pressure gas pipeline had been constructed. The supreme court pointed out that:
“According to the petition, in the opinion of real estate experts, damage results to lands abutting pipeline rights of way.” Id. at 95
The court set forth the issue presented as follows:
“Does the construction of a hazardous high-pressure gas pipeline adjacent to and within fifteen feet of the property line separating contiguous estates give rise to an action for damages caused by this proximity which impairs the market value and full use of the neighboring estate?” Id. at 96
The Hero decision recognized that LSA-C.C. Art. 667 provides that a proprietor must not use his estate in such a manner as to cause damage to a neighbor’s property and emphasized the rule does not require fault or negligence as a basis for the damage:
“As expressed in the Article, the principle is a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor’s property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971). The article expresses, as this Court has often stated, a doctrine of strict liability which does not depend upon deliction. . . . ” Id. at 97.
The court pointed out that alleged facts are considered true for the purpose of the exception of no cause of action and found among the facts considered to be true the following:
“According to reliable evidence property value is reduced within the 250 foot corridor surrounding the pipeline right of way.
*797 The hazard and danger to the Hero property is illustrated by four specific incidents involving explosions of gas lines. Also, real estate appraisers are of the opinion that such a gas pipeline depreciates the surrounding property.” Id. at 98
In Hero the court quotes C.C. Art. 668 which provides:
“Art. 668. Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor’s [neighbor’s] house, because this act occasions only an inconvenience, but not a real damage.” Id. at 96.
The court recognized this Article requires an adjoining property owner to tolerate certain inconveniences and the application of C.C. Articles 667 and 668 evolves into:
“The problem is one which involves the nature of the intrusion into the neighbor’s property, plus the extent or degree of damage.” Id. p. 98
Hero requires plaintiff’s cause of action be established by convincing evidence.
The trial judge, in his excellent written reasons for decision, observed that all of the earlier explosions of pipelines contained in plaintiff’s illustrative list involved much larger lines than the gathering line owned by defendant. There is substantial evidence in the record in the form of testimony of defendant’s expert appraiser and two other witnesses to support the finding of the trial judge that plaintiff failed to prove its lot sustained damage because of the proximity of the pipeline. If there is any buyer resistance to the lots in plaintiff’s subdivision by virtue of the existence of the gas gathering pipeline, it is of a slight nature and falls within the category of “inconvenience, but not a real damage”. LSA-C.C. Art. 668. The case is distinguishable from Hero because all the facts alleged in Hero for the purpose of the exception were accepted as true, whereas the trial judge here performed the function of making the factual determination and it is not to be disturbed unless clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find the record fully supports the trial judge’s factual determination.
During the trial defendant established that its pipeline passed through the northwest corner of plaintiff’s subdivision for a distance of approximately 100-feet. There was a small triangle 65 X 73 feet in the subdivision north of defendant’s line.' Defendant’s expert appraiser testified that plaintiff had been damaged by this taking in the amount of $300, this damage consisted of the sum of $180 for the part taken and severance damage in the amount of $120. Plaintiff was unaware until advised by defendant at trial that this taking had occurred, but made no objection to defendant’s evidence concerning the taking and the amount of the damage.
The trial court found the introduction of this evidence by defendant expanded the pleadings wherein plaintiff had claimed damages only for the depreciation in the value of its property by virtue of the existence of the pipeline 12V2-feet north of the subdivision line. The trial court left the case open for plaintiff to offer evidence of its damages caused by defendant’s construction of the pipeline in the subdivision. Plaintiff and defendant stipulated the court could consider the amount of damages based upon the testimony of defendant’s appraiser, all trial exhibits and a letter by plaintiff’s appraiser wherein he expressed the opinion that plaintiff had been damaged to the extent of $2,500 by defendant’s construction of the pipeline across the northwest tip of plaintiff’s subdivision. Plaintiff was awarded the sum of $1,200 for the servitude and severance damages for this taking.
*798 Defendant contends the issue was not properly before the court because it was not included within plaintiff’s petition. Defendant asserts good faith compelled it to disclose all the facts in connection with its pipeline in plaintiff’s subdivision. It contends that not to have made this disclosure would- have misled the court on the trial of the case, and under these circumstances, it should not be considered to have consented to an enlargement of the pleadings by virtue of having offered the evidence that its pipeline crossed the subdivision. Defendant could have made this disclosure to plaintiff sometime prior to the trial, but waited to trial before voluntarily advising plaintiff of its trespass. Under these circumstances, we agree with the trial judge that defendant clearly consented to inject this issue of its having taken a part of plaintiff’s property and its version of the award plaintiff should receive. This evidence was not essential to the determination of the primary issue created by the pleadings, that being the effect of defendant’s pipeline upon plaintiff’s subdivision.
LSA-C.C.P. Article 1154 provides:
“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading . . . ”
See the decision of State, Department of Highways v. Sotile, 309 So.2d 873 (La.App. 1st Cir. 1974) wherein pleadings were expanded by testimony of a landowner’s appraiser offered without objection to establish a landowner was entitled to additional compensation for 8.59 acres which he had not sought in the pleadings.
Defendant contends the trial court’s award was excessive. The highest price plaintiff had received for any lot in the subdivision was $1,200 and this was for a lot sold in September, 1976 which had an 80-foot front with a depth of 170-feet. This lot contained 13,600 square feet. Defendant’s pipeline occupies 2,500 square feet of plaintiff’s property and has the effect of leaving a triangle containing 2,372 square feet separated from the remainder of the subdivision.
Defendant has permanently damaged 4,872 square feet of plaintiff’s property. This is a far smaller area than the 13,600 square feet contained in the lot for which plaintiff received $1,200. We believe $600 is a realistic evaluation of the amount plaintiff should receive and the trial judge’s award of $1,200 is excessive.
Defendant complains it was assessed with legal interest upon plaintiff’s damage from date of judicial demand, whereas there was no demand contained in plaintiff’s suit for the damages it was awarded. We find these damages shall bear judicial interest from the date the pleadings were expanded during the trial of the case on November 7, 1977.
Defendant contends the trial court erred in assessing it with all court costs in this matter.
In this litigation plaintiff’s total demand contained in its pleading for damages in the amount of $48,666 was rejected. It only made a recovery by virtue of the pleadings being expanded by defendant’s evidence, and this recovery was nominal as compared to the amount of its demand.
LSA-C.C.P. Art. 2164 provides that this court may assess costs as it considers equitable:
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.”
In the decision of Miller v. Housing Authority of New Orleans, 175 So.2d 326 (La.App. 4th Cir. 1965) the court in discussing the costs provisions of C.C.P. Art. 2164 made the following observation:
“In conformity with the rationale emanating from Article 2164 of the LSA-Code of Civil Procedure, an appellate court may tax the costs of the lower or of this court, or any part thereof, against any litigant involved in the suit as in its *799 judgment may be equitable. The exercise of this judicial discretion is permitted and exists by virtue of the statutory law and jurisprudence of this state, and it is now rather well established.” Id. at 332-333.
We find the trial court abused its discretion when it assessed all costs to defendant and we have determined that it is fair and equitable for costs to be assessed equally to plaintiff and defendant.
For the reasons assigned, we amend Paragraphs No. 2 and 3 of the trial court’s judgment to read as follows:
2. On the actual trespass for construction of a pipeline on plaintiff’s property, there is judgment in favor of plaintiff, Red River Realty, Inc., and against defendant, Relmm Corporation, in the full and true sum of Six Hundred and No/100 ($600.00) Dollars, with legal interest thereon from the date of November 7, 1977 until paid.
3. Red River Realty, Inc. and Relmm Corporation are each assessed for one-half of the court costs.
As AMENDED, the judgment is AFFIRMED.