328 So.2d 169 (1976)
Mrs. Mildred L. REESE et al., Plaintiffs-Appellants,
v.
SOUTH COAST CORPORATION, Defendant, Third-Party Plaintiff, Appellee and Appellant.
No. 10525.
Court of Appeal of Louisiana, First Circuit.
January 12, 1976.
Rehearing Denied March 1, 1976.
Murphy W. Bell, Baton Rouge, for plaintiffs-appellants.
Charles J. Hanemann, Houma, for defendant-appellee.
James C. Walker, Jr., Houma, for Third Party Defendant Coastal Dragline Works, Inc.
Before SARTAIN, BAILES and PICETT, JJ.
SARTAIN, Judge.
Plaintiffs-appellants, direct descendants of Grace Butler Carter, bring this appeal from judgment rendered against them in an action for damages brought against defendant, South Coast Corporation (hereinafter referred to as South Coast) as the result of the desecration of Mrs. Carter's grave allegedly caused by defendant. South Coast denies responsibility for the damage and further filed a third party demand against Coastal Dragline Works, Inc. (hereinafter referred to as Coastal). The trial judge rendered judgment in favor of South Coast dismissing plaintiffs' claim against it and further decreed the third-party demand of Sourt Coast against Coastal to be moot. We affirm for reasons stated herein.
The record before us shows that defendant South Coast owns property in Terrebonne Parish near the settlement of Presquille, Louisiana. It appears that in April of 1970 South Coast had engaged third party defendant Coastal to clear a certain portion of its lands in that area. Shortly after the completion of the work it was discovered that a crypt located on or near South Coast's property had become cracked on one of its corners.
*170 The deposition of Charles Denley introduced into evidence shows that he was employed by South Coast during the time in question and was first made aware of the damaged crypt by John Aubert, an assistant overseer. On the day Aubert reported discovery of the damage, Denley visited the grave site and found one of the upper corners knocked off from the tomb. He instructed Mr. Aubert to get in touch with the decedent's relatives to discuss arrangements for repair or removal. Aubert reported back to Denley on the same day that he had only been able to contact a grandson of the decedent, Mr. Buck Smith, who indicated he would have to consult with other family members before he could advise Aubert and Denley.
Subsequently, after the passage of approximately ten days and still no response from Smith, Denley himself contacted Smith and visited with Smith in Denley's office. Smith again indicated that he would have to consult with his family, most of whom it appears lived outside the local area.
While awaiting further instructions from the family (no response was ever forthcoming following Denley's visit with Smith), Denley was informed by Aubert that vandals had broken into the tomb, removed the body, and left it beside the crypt. Upon hearing of this Denley immediately had a guard posted at the site and on the following morning had Houma Concrete Products repair the grave at South Coast's expense. He then made no further effort to contact the family.
Carlie Hebert, another employee of South Coast testified at trial that he was field manager for South Coast in the Terrebonne Division. He stated that Coastal had been engaged to clear portions of South Coast's land in order to enlarge the headlands so that they would facilitate larger machinery to be employed by South Coast in its agricultural operations. According to his testimony, Coastal was not assisted in any way in this project by employees of South Coast.
Hebert stated that he visited the site of the tomb shortly after the damage was reported to him and found the tomb cracked. He testified that Coastal had been using bulldozers to clear the headlands but had completed their work several days before any damage was discovered. He described the tomb as being some thirteen feet from the lower edge of the headlands and the land upon which the tomb rested elevated approximately two feet over the adjoining fields. At the time he inspected the tomb he noticed brush approximately two inches in diameter piled up near the tomb. He noted further that the weeds and brush around the tomb and its surrounding area were very thick, so thick that he did not attempt to ascertain if there were any other tombs or graves in the area. The tomb itself, he stated, was located under the overhanging branches of a nearby tree. He saw no bulldozer tracks around the tomb and had no idea how the tomb became damaged.
Louis Rogers, an employee of Coastal, testified that he and another Coastal employee, Elton Davine, cleared the area here in question in April of 1970. He stated that he saw no tomb while working, but had his bulldozer struck a tomb, he would have known it. He had no personal knowledge of how the damage to the tomb occurred and stated that nothing he was pushing had damaged it.
Elton Davine, the other bulldozer operator employed by Coastal who cleared the land, stated that he, too, had been unaware of any tomb in the area. Like Rogers, he also felt that if he had hit a tomb he would have felt it and if his machine had pushed anything into a tomb he would have sensed it.
Both Davine and Rogers noted that there was a rise at the end of the headlands of at least two feet, and each testified that his bulldozer never went upon it.
*171 Several descendants of Mrs. Carter testified at trial. It appears from their testimony and the death certificate in the record that Mrs. Carter, one hundred two years old when she died, was buried at the grave site in February of 1960. It appears that some of the relatives may have visited the grave annually, but none had been there recently. This is further evidenced by the apparent state of the grave site with respect to the dense underbrush and foliage that surrounded it.
The trial judge upon hearing the evidence concluded in his written reason:
"The evidence establishes that the grave was first discovered by employees of South Coast to have been broken in April of 1970. However, the plaintiffs have not proved by a preponderance of the evidence when the tomb was broken, how it was broken, or by whom it was broken. The plaintiffs have suggested that employees of Coastal Dragline Works, Inc., operating bulldozers in the vicinity, broke the tomb. The plaintiffs have not asserted any action directly against Coastal Dragline Works. Coastal Dragline Works was an independent contractor of South Coast. The evidence does not establish that employees of Coastal Dragline Works broke the tomb. Even if it did, the acts of the employees of Coastal Dragline Works would not be imputable to South Coast."
On appeal plaintiff argues that recovery should be allowed under La.C.C. Art. 2315 and/or La.C.C. Art. 667. We pretermit any discussion of the applicability vel non of Art. 667 to the particular facts of this case since we conclude the trial judge was correct insofar as his determination that causation has not been established by a preponderance of the evidence here presented.
In order to hold a defendant liable under La.C.C. Art. 2315 or La.C.C. Art. 667 the plaintiff has the burden of proving the defendant's actions were a cause in fact of the injury sustained. In the present case plaintiffs have offered no direct evidence to establish that defendant South Coast or third party defendant Coastal were in any way responsible for the damaged tomb. Furthermore, while it is true that causation may be proved by circumstantial evidence and that that evidence need not negate all other possible causes, such evidence still must exclude other reasonable hypothesis with a fair amount of certainty. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (1973). We find no sufficient degree of certainty in the evidence here presented for it would be pure speculation on our part to surmise how the damage here complained of may have occurred.
For the above and foregoing reasons, the decision of the trial court is affirmed with all costs of these proceedings to be borne by plaintiff-appellant.

Affirmed.