366 So.2d 219 (1978)
J. D. RUSSELL et al., Plaintiffs-Appellants,
v.
WINDSOR PROPERTIES, INC. et al., Defendants-Appellees.
No. 6761.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
*220 Smith, Taliaferro, Seibert & Boothe, Leo Boothe, Jonesville, for plaintiffs-appellants.
Marc Dupuy, Jr., Marksville, Davenport, Files and Kelly, William G. Kelly, Jr., Monroe, for defendants-appellees.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
GUIDRY, Judge.
Plaintiffs instituted this suit for recovery of damages in the sum of $44,313.69, allegedly representing crop loss and insect control costs incurred as a result of the alleged exposure of plaintiffs' 1974 cotton crop to certain chemicals negligently applied by defendants on property belonging to Windsor Properties, Inc. The trial court rendered judgment in favor of plaintiffs and against defendants in the principal sum of $11,950.83, concluding that defendants *221 were responsible for only a part of the damages which plaintiffs sustained. Plaintiffs appeal and assign as error the trial court's failure to find that defendants' spraying operations caused all of the damage to plaintiffs' crop. Defendants have neither appealed nor answered the appeal of plaintiffs.
The trial judge favored this court with an excellent written opinion with which we agree. Accordingly, we take the liberty of quoting at length from his reasons for judgment:
"This is a suit for damages suffered by plaintiffs as a result of the exposure of J. D. Russell's 1974 cotton crop to chemicals alleged to have been applied by defendants on property belonging to Windsor Properties, Inc. Plaintiffs are Russell and his lessor. Defendants are Windsor Properties, Inc., James P. Boone, the principal stockholder and operator, Farmers Dusting Co. and its operator.
Plaintiff Russell farmed cotton and soybeans in 1974 on property belonging to the Louisiana Delta Plantation located in the southern part of Catahoula Parish in an area on Red River called Grand Bend. At this point, Red River has a large bend in its channel and there runs south, east, northerly and thence back East and South. Across the river from the Louisiana Delta Plantation land is property in Avoyelles Parish owned by Windsor Properties, Inc., and others. Russell's cotton was located in two fields in this Grand Bend area where Red River runs to the east, thence northerly and curves again to the east and south. Defendants' property is across Red River from the Russell cotton and lies generally to the east and north. Defendant Windsor owns two tracts of land on the east bank of Red River across from the Russell cotton, one tract is a triangular shaped tract containing 120 acres, and another a rectangular shaped tract containing 270 acres. Other landowners own dense timber land surrounding these two tracts and then Windsor owns some 4000 more acres to the east of these woodlands.
Russell's northerly cotton field is located on the west bank of Red River and contains 76.1 acres, lying generally southwest of the Windsor 270 acre tract and northwest of the Windsor 120 acre tract, and across Red River from them. The Russell southern cotton field contains 175.8 acres and lies southwest of both of the Windsor tracts.
The record shows that in 1973 the Windsor properties sustained considerable flooding, and after the flood waters receded, there emerged a large infestation of cockleburs. The court was favored with the testimony of very fine experts, particularly Mr. Mason, Mr. Odom and Mr. Davis, in explaining the propensities of the chemicals involved here, and their affect on cotton plants. It is claimed that defendants sprayed a 2-4D type material on the Windsor property east of Red River and that it drifted or was blown by wind onto the Russell cotton. It was shown that Mr. James P. Boone, the chief stockholder and operator of Windsor Properties, Inc., engaged the services of Farmers Dusting Co. to spray the 270 acre tract and/or the 120 acre tract to kill the cockleburs. Pursuant thereto the Farmers Dusting Company did apply by aerial application a material called A-3-D, an invert material. This is a chemical which when mixed with kerosene as in this case, under certain pressure, emulsifies and acquires the consistency of mayonnaise. The purpose of using this type of material in this manner in spraying is to prevent winddrift and special equipment is needed for that purpose. This material was applied by Farmers Dusting Co., on July 12 and 13, 1974. The record also shows that for two or three days after the aerial spraying of the 270 and/or 120 acre tracts of defendant, Mr. Boone had his employees to spot spray areas on these tracts (or at least the 270 acre tract) where the aerial spraying was not effective. A substance known as Dow Formula 40 was used, it also being a 2-4D Amine type of material. This spot spraying was done with a ground rig, being a tractor with spray attachment on a boom about 20 inches above the ground. Apparently these operations took place within a few days of the aerial spraying.
*222 Plaintiffs noticed evidence of damage to the Russell 175.8 acre cotton field on July 24, 1974, and immediately the Louisiana Department of Agriculture was notified and after which the crops were carefully watched. Thereafter the crop was handled in accordance with department recommendations.
There is no doubt that these first symptoms of damage were traced to the spraying conducted by defendants during the middle of July, 1974. The time element and the appearance of the symptoms are compatible. However, it is very significant to note that all of the expert witnesses testified that the Russell 175.8 acre cotton was subjected to more than one exposurethat is, more damage was suffered than could have been made in the middle part of July. They testified that their examination of the plants indicated without doubt that this cotton was subjected to chemical exposure at least twice and perhaps three times, some of which would have had to come much later than the July exposure. Some effort was made to prove other spraying by defendants later in the year, but only ground rig spraying several miles away may have been indicated, and we do not feel any connection was proved between that, if in fact there was any, and the crop damage here. It was shown that soybean farmers in the area including plaintiff Russell, sprayed a similar material called Butarac by air and this also was several miles away. This could have as easily caused plaintiff's later damage as defendant's later ground rig spraying, if indeed there was any.
Under the settled jurisprudence of this state the defendants are answerable for any danage (sic) caused by their spraying of chemicals. It makes no difference how careful they may have been or how much precaution they may have taken to prevent damage, they are strictly responsible for damages which may be attributable to their activities. However, it must be proved that there is a causal connection between defendant's activities and plaintiff's damage. It must not be left to conjecture and speculation. The fact that it was proved that defendants conducted spraying operations in July which caused some damage does not prove that similar activities were conducted in August or later which caused further damage. Because defendants are guilty of the July operation, they should not be condemned and presumed guilty of August or subsequent damage, without proof of same.
The expert testimony shows that symptoms of cotton damage when exposed to this type of material are visible to laymen within 7 to 10 days. When plaintiffs observed the symptoms to the Russell 175.8 acre cotton field on July 24, 1974, there is no doubt that this was reasonably attributable to defendants July activities. However, at this time the Russell 76.1 acre field was not affected. Even on August 28, 1974, when Mr. Davis was taken to the property to observe the damage, they passed by the 76.1 acre field and no mention was made of damage to it, in fact it was discussed that it would be a good field to use as a comparison in assessing damage to the other field. Therefore, the July spraying could not have caused the damage to this field.
According to the experts, cotton may be exposed to this type of chemical and if not re-exposed recover to make a reasonable crop. Here they estimate that the damage resulting from the first exposure was at most about 35%. Since it is not found that the 76.1 (sic) cotton field was damaged by the July spraying, no damage will be assessed with regard to it. As to the 175.8 acre field, 35% will be allowed, based on the area average yield of 444.52 lbs. per acre, at the average price received in the area of 40.12¢ per pound. Also the loss of pesticide expenses on the 175.8 acre field will be allowed.

These damages are as follows:
Area average production 444.52 lbs. per acre
175.8 acre field production 40.52 lbs. per acre
 ______
Loss per acre 404.00 lbs.
404.00 × 175.8 = 71023.2 @
40.12¢ per lb. = $28,494.50 × 35% = $9,973.08
Cost of Russell's
 pesticide per acre $18.52
Average cost 7.27
 _____
Loss per acre $11.25
$11.25 × 175.8 = 1,977.75
 ________
 Total loss $11.950.83

*223 Therefore judgment will be rendered in favor of plaintiffs as tenant and landlord, as their interests appear, against the defendants in solido, in the sum of Eleven Thousand Nine Hundred Fifty and 83/100 ($11,950.83) Dollars, plus legal interest from date of judicial demand and for costs."
We believe that our learned trial brother correctly determined that defendants are strictly liable for all damages occasioned to plaintiffs' 1974 cotton crop which are shown to have been proximately caused by defendants' spraying operations, regardless as to whether or not the evidence shows that such spraying operations were conducted with all reasonable care and in accordance with modern and accepted methods. Further we conclude that we need not determine whether defendants' responsibility to plaintiffs results from the application of LSA-C.C. 667[1] (See Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971); Hero Lands Company v. Texaco Inc., 310 So.2d 93 (La.1975)) or whether defendants' liability to plaintiff is founded upon the strict liability of a proprietor under LSA-C.C. Article 2315 for damages resulting from his conduct of ultrahazardous activities and/or enterprises on his property. (See Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (1970); Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) and, concurring opinions in Chaney, supra, and Hero, supra). Irrespective of whether liability be founded on art. 667 or on fault under art. 2315 as analogized from the conduct required under art. 667, it is made clear from a reading of Gotreaux, Reymond, Langlois, Chaney and Hero, supra, that the absence of negligence on the part of a landowner who conducts extrahazardous activities on his property (application of herbicides by a farmer to his crops) is immaterial to his liability for damage caused by such activities. We consider it to be equally settled that, under such circumstances, liability attaches also to the agent or contractor who becomes solidarily liable with the proprietor. See D'Albora v. Tulane University, 274 So.2d 825 (La.App. 4th Cir. 1973). Be this as it may, plaintiffs are only entitled to recover from defendants such damages as are shown by a preponderance of the evidence to have been proximately caused by defendants' activities. As noted in Watson v. Mid-Continent Aerial Sprayers, Inc., 170 So.2d 149, 151 (La.App. 2nd Cir. 1964):
"Whatever language, doctrine or legal principle is relied upon, the court in each case must ultimately come face to face with the issue of burden of proof and proximate cause. We must not become so obsessed with the application of legal theories of common-law doctrines that we forget the primary principle of law that the plaintiff must prove he was damaged by some act of defendant. Whether liability be determined to be under LSA Civil Code Article 667 or by reason of the proper application of res ipsa loquitur, it is elementary that the plaintiff prove by a preponderance of the evidence that the alleged instrumentality did in fact cause the damage."
This is precisely the issue currently before the court, i. e., did the plaintiffs offer sufficient evidence to prove that the defendants were solely responsible for the damage to plaintiffs' crops. In order to hold a defendant liable under Articles of our Civil Code pertaining to liability for acts causing damage or under other articles proscribing limitations on use of property, plaintiff has the burden of proving the defendant's actions were a cause in fact of the injuries sustained. It is true that causation may be shown by circumstantial evidence and such evidence need not negate all other possible cause, but nevertheless such evidence must exclude other reasonable hypothesis with a fair amount of certainty. Reese v. South Coast Corporation, 328 So.2d 169 (La.App. 1st Cir. 1976). In the event *224 that the plaintiff does not meet his burden, his action must fail.
Here, the trial judge found that the defendants were responsible for some of the damage to plaintiffs' crops. The defendants, in their brief, admit this liability. However, after a full consideration of the evidence, the lower court found that plaintiffs had not met the burden of proof as to all the damages sought. This is a factual question and, on review, in the absence of manifest error on the part of the trial court, must not be disturbed. Canter v. Koehring Company, 283 So.2d 716 (La.1973). A careful examination of the record reveals that there was more than adequate support for the trial court's conclusion as to the extent of defendants' liability and the amount of damages which their spraying operation caused. We find no manifest error in the decision of the trial court.
For the above and foregoing reasons, the judgment appealed from is affirmed and all costs are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.